# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ESTATE OF CAESAR STINSON and
CHIPO K. SAMVURA

                Plaintiffs,

v.

MILWAUKEE COUNTY, JOEL R.
STREICHER, and WISCONSIN
COUNTY MUTUAL INSURANCE
CORPORATION,

                Defendants.

Case No. 21-CV-1046-JPS

**ORDER**

      This case comes before the Court on defendant Milwaukee County ("the County") and Wisconsin County Mutual Insurance Corporation ("WCMIC")'s motion for partial judgment on the pleadings, to which defendant Joel Streicher ("Streicher") (collectively, "Defendants") joined. ECF Nos. 8, 11. The plaintiffs in this case are the Estate of Caesar Stinson (the "Estate" or "Stinson") and Stinson's spouse, Chipo Samvura ("Samvura") (collectively, "Plaintiffs"). The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(a). For the reasons explained below, the Court will grant the motions in part and deny them in part.

1.     **LEGAL STANDARD**

      Once the pleadings are closed, a party may file a motion pursuant to Federal Rule of Civil Procedure 12(c) to challenge the sufficiency of the pleadings. These motions are evaluated under the same standard as motions to dismiss brought pursuant to Rule 12(b)(6). *Adams v. City of*

*Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). To state a claim sufficient to withstand a Rule 12(b)(6) motion, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citations and quotations omitted).

2.  **RELEVANT FACTS**

On January 25, 2020, during daylight hours, Streicher, an officer with the Milwaukee County Sheriff's Department, got into his patrol car and drove northbound on Tenth Street. As he approached the intersection of Tenth Street and State Street, he looked down at his car's computer screen while maintaining a speed of about thirty miles per hour. He is not sure how long he looked down, but it was long enough to miss the four-second yellow light at the intersection of Tenth and State, and long enough to miss the first eleven seconds of the red light that followed. It was long enough that he did not see the west-bound traffic crossing State Street, and long

enough that he did not notice that he was in the right-hand turn lane. Streicher drove straight into the intersection, collided with Stinson's car, and killed him. Streicher did not brake.

Plaintiffs allege that Streicher had lived this nightmare before. On July 25, 2018, Streicher exited I-43 South at West Highland Avenue and found himself in the left-hand turn lane. Instead of turning left, Streicher drove straight through the intersection and collided with another car that was properly driving through the intersection in the center lane. There are no allegations that a death occurred in that crash.

### 3. ANALYSIS

#### 3.1 Substantive Due Process Claim – Estate of Stinson

In order to successfully state a substantive due process claim arising from Stinson's death, the Estate must allege that Streicher acted "with criminal recklessness—which is the same as deliberate indifference." *Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021) (citations and quotations omitted). Deliberate indifference requires the offending officer to have "actual knowledge of impending harm which he consciously refused to prevent." *Id.* (citing *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996)). "Identical behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions." *Id.* In other words, an allegation that a police officer had time to deliberate strengthens the claim that he did, in fact, know of the risk of the harm. "The key question is whether the officer had sufficient knowledge of the danger such that one can infer he intended to inflict the resultant injury." *Id.* (citations and quotations omitted).

*Hill* and *Flores* stand as the Seventh Circuit's bookends for which allegations are sufficient to state a substantive due process claim arising

from a death caused by a police officer's car crash. In *Hill*, the Seventh Circuit held that "motor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation . . . absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it." 93 F.3d at 421. The plaintiff in *Hill* alleged that a police officer drove "well over" the speed limit at midnight with no headlights, flashers, or sirens; the court determined that this was insufficient to permit an inference that the police officer acted with intent to cause harm. *Id.* The court explained that it was not enough to allege that the officer, "like any reasonable person, knew that driving at high speed at night without lights could have potentially fatal consequences." *Id.* The court dismissed the complaint.

By contrast, in *Flores*, the Seventh Circuit found a plausible allegation of deliberate indifference where the complaint alleged that an officer, responding to a routine traffic stop for which nobody called backup, drove between fifty and eighty miles over the speed limit in a residential area just before dawn, only intermittently used his flashers and sirens, and drove through a red light at an intersection with an obstructed view of cross traffic, resulting in the death of the plaintiff, an innocent and law-abiding driver. *Flores*, 997 F.3d at 730. The court explained that "the law does not provide a shield against constitutional violations for state actors who consciously take extreme and obvious risks." *Id.* It concluded that the officer's conduct "reflected deliberate indifference to the obvious risk he created when he sped through residential areas and launched himself through an intersection, against the light, without the ability to see or adjust to cross-traffic." *Id.* at 734.

This case falls somewhere between *Hill* and *Flores*. Streicher was on patrol at the time, but he was not responding to any emergency. He looked down at his computer for at least fifteen seconds but continued driving at a speed of thirty miles per hour. As described above, he did not see the yellow light, the red light, the cross-traffic, or the fact that he was in a turn-only lane. He drove straight into the intersection, hit Stinson's vehicle, and killed him.

Defendants make much of the allegations that Streicher did not see, and therefore did not know, that the light was yellow, then red, then that there was cross-traffic, and so on. They argue that these allegations bely any intent on Streicher's part to cause harm. But one does not need to know, for a fact, that a light is red to know, for a fact, that driving without looking will cause an accident. If Streicher had been driving blindfolded, then he also would not have seen the red light and cross-town traffic. The question is whether Streicher looked down at his computer for such a long period of time *knowing* that it would result in harm to others, or whether he was merely negligent. Plaintiffs have offered one prior car crash in Streicher's past to illustrate that he, perhaps more than most, ought to have appreciated the importance of careful driving. The allegations in the complaint are sufficient to permit an inference that Streicher acted with intent to cause harm; the question of whether, in fact, he did is best left for the fact-finding portion of the case.

### 3.2 Substantive Due Process Claim – Chipo Samvura

Defendants move to dismiss Samvura's derivative § 1983 claim for loss of consortium. "The relationships that define the nuclear family . . . are protected" under the Constitution. *Niehus v. Liberio*, 973 F.2d 526, 533 (7th Cir. 1992) ("There would be no novelty in interpreting 'liberty' to embrace

the right of sexual companionship in marriage."). However, in *Niehus*, the court declined a plaintiff's invitation to rule that "consortium is liberty, period," and thus denied her substantive due process claim based on her loss of consortium. While the court acknowledged the liberty interest in certain aspects of marriage, it explained that "consortium" included a range of behaviors from raking leaves ("lesser services") to "all spousal services" (i.e., those "greater deprivations"), and the former "is not a liberty protected by the Fourteenth Amendment." *Id.* at 534. But when called on to draw a distinction between which consortium activities rise to a liberty interest and which do not, the court demurred: it noted that supplemental jurisdiction pursuant to 42 U.S.C. § 1367 would enable a spouse to join a state consortium claim to a constitutional claim, thus permitting a federal court to hear both. *Id.* The Court concluded that this "will make the question whether consortium is a constitutionally protected liberty largely an academic one in future cases." *Id.*

The future is here, and the Court is tasked with considering this largely academic question. Since *Niehus*, the Seventh Circuit has overturned an earlier decision permitting parents to recover for the loss of their relationship with an adult child. *Russ v.* Watts, 414 F.3d 783, 790 (7th Cir. 2005) (overturning *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984)). *Russ* is not squarely on point, but it acknowledges a guiding principle: "Most courts . . . have expressly declined to find a violation of the familial liberty interest where the state action at issue was not aimed specifically at interfering with the relationship." *Id.* at 787–88 (citing cases). The *Russ* court left open the possibility that "minor children's need for the guidance and support of their parents warrants sharply different constitutional treatment." *Id.* at 790 (citations omitted); *see also Estate of Fiebrink v. Armor*,

Case No. 18-CV-832-JPS, 2019 WL 1980625, at *11 (E.D. Wis. May 3, 2019) (permitting a minor to move forward with a § 1983 claim for the loss of his mother considering *Russ*'s dicta and the lack of Seventh Circuit precedent). A year after *Russ*, the Seventh Circuit offered additional guidance, in dicta, in *Thompson v. City of Chicago*, in which it declined to reinstate a wife's § 1983 claim based on her familial relationship with the deceased, noting that she had not alleged that the deceased was killed "for the specific purpose of terminating [his] relationship with his family." 723 F.3d 444, 452 n.25 (7th Cir. 2006) (quoting *Russ*, 414 F.3d at 790).

Against this backdrop, the district courts in this circuit have generally eschewed derivative § 1983 claims.[1] For example, in *Pitzer v. City of East Peoria, Illinois*, the estate of a man killed by police brought a "single federal claim" under § 1983, but, if successful on the § 1983 claim, wished to pursue damages for loss of consortium, society, and companionship. 597 F. Supp. 2d 806, 810 (C.D. Ill. 2009). The district court determined that there was no conflict in applying Illinois state law regarding damages in survival actions to § 1983 claims because § 1983 did "not address what types of damages are available to the estate of a deceased claimant whose life was terminated by unconstitutional state action." *Id.* In so holding, the court determined that it did not risk "unwarranted expansion of the concept of substantive due process under the Fourteenth Amendment," as cautioned *Niehus* and *Russ*, because "no one is asking this Court to recognize a

---

[1]Plaintiffs cite district court cases from the Third Circuit, which rely, in large part, on the now-overturned principles set forth in *Bell*, and thus which are less persuasive to the Court today. *See e.g.*, *Pahle v. Colebrookdale Township*, 227 F. Supp. 2d 361, 382–83 (E.D. Penn. 2002).

constitutional cause of action for [the deceased]'s wife or minor children." *Id.*

Here, Plaintiffs *are* asking the Court to recognize a constitutional cause of action for Stinson's wife. In light of the foregoing analyses, the Court concludes that is bound by *Niehus*, which rejected a very similar type of claim as the one that Samvura seeks to bring. 973 F.2d at 533–34. Relatedly, *Russ* and *Thompson* indicate that, to be actionable, a family member's constitutional violation based on official action ought to be "directed at the [familial] relationship"—otherwise, courts might risk "constitutionalizing all torts against individuals who happen to have families." *Russ*, 414 F.3d at 790.

Based on the guidance in these cases, the Court will grant the motion to dismiss this claim. This dismissal should not work a hardship on Samvura, whose losses should be more than adequately addressed by her state law loss of consortium claim, which is Count Three in this lawsuit. Nevertheless, the dismissal will operate without prejudice. The Court in *Niehus* did not foreclose the possibility of a spouse bringing a § 1983 claim for loss of the "greater deprivations" of consortium, 973 F.2d at 534, and, given the lack of an on-point holding on this issue, it is not evident what the outer limits of Samvura's rights are—the Court cannot say with certainty that she could never allege such a violation.

### 3.3 State Law Indemnification Claim – WCMIC

Wisconsin state law permits direct actions against insurers "covering liability to others for negligence[.]" Wis. Stat. § 632.24. "The terms of the statute do not authorize [a] plaintiff to bring a separate action against WCMIC under § 1983 for alleged constitutional violations." *Akright v. Graves,* Case No. 05-C-821, 2006 WL 897759, at *2 (E.D. Wis. April 3, 2006).

Plaintiffs have brought claims of negligence and constitutional liability against WCMIC, but it can only be sued for negligence. Thus, Counts One and Two, which are predicated on constitutional liability, will be dismissed against WCMIC.

## 4. CONCLUSION

For the reasons explained above, Defendants' motion for judgment on the pleadings will be granted in part and denied in part.

Accordingly,

**IT IS ORDERED** that Defendants' first motions for judgment on the pleadings, ECF Nos. 8, 11, be and the same are hereby **GRANTED in part and DENIED in part**, as stated in the text of this Order;

**IT IS FURTHER ORDERED** that Count Two of Plaintiffs' complaint be and the same is hereby **DISMISSED without prejudice** as to Defendants Milwaukee County and Joel R. Streicher;

**IT IS FURTHER ORDERED** that Count Two of Plaintiffs' complaint be and the same is hereby **DISMISSED with prejudice** as to Defendant Wisconsin County Mutual Insurance Corporation; and

**IT IS FURTHER ORDERED** that Count One of Plaintiffs' complaint be and the same is hereby **DISMISSED with prejudice** against only Defendant Wisconsin County Mutual Insurance Corporation.

Dated at Milwaukee, Wisconsin, this 2nd day of May, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge