UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

ESTATE OF CEASAR STINSON and
CHIPO K. SAMVURA,

    Plaintiffs,

v.                                              Case No. 21-CV-1046-JPS

MILWAUKEE COUNTY, *et al.*,

    Defendants.
_____

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT
_____

### INTRODUCTION

Under long-standing Seventh Circuit precedent, "[i]t is insufficient [for the purposes of a due process claim] to show that a public official acted in the face of a recognizable but generic risk to the public at large." *Hill v. Shobe*, 93 F.3d 418, 421-22 (7th Cir. 1996). "To hold otherwise would diminish the civil rights statutes to the equivalent of a body of general federal tort law, and open the courts to a flood of litigation which the framers of § 1983 clearly did not intend." *Id.* at 422. Yet, the material undisputed facts in this case allow for no more than the inference that former Milwaukee County Sheriff's Deputy Joel Streicher was inattentive as he drove northbound on 10th Street just prior to the undeniably tragic accident that killed Ceasar Stinson and that he thereby negligently created a generic risk to the public at large in his vicinity.

Such an "unintended loss of life resulting from a state employee's lack of due care does not implicate the due process clause." *Id.* at 421. Instead, to establish such liability, "a plaintiff must demonstrate that the defendant [public employee] had actual knowledge

of impending harm which he consciously refused to prevent." *Id.* No such proof is possible here, where plaintiffs, Stinson's estate (the "Estate") and his former spouse, Chipo Samvura (together, "plaintiffs"), have adduced no evidence that Streicher knew he was entering the intersection where the accident occurred against the light or that Streicher otherwise consciously ignored an impending harm of which he was aware.

Defendants, Milwaukee County, the County's insurer, and Streicher (together, "defendants"), acknowledge that this Court previously addressed motions challenging the sufficiency of the Estate's § 1983 claim on the face of the complaint. Respectfully, defendants submit that the material undisputed facts compel the conclusion that the Estate's Fourteenth Amendment claim must fail on summary judgment because no violation of the Due Process Clause can be established, and they urge this Court to reconsider its prior ruling insofar as the undisputed facts overlap with those of the complaint. Regardless, defendants also submit they are entitled to summary judgment because the Estate cannot establish that the process afforded under Wisconsin law – the right to pursue a remedy in tort – is an inadequate remedy for the alleged wrongs of Streicher. Moreover, even if this Court accepts that a jury might reasonably conclude that Streicher violated the Fourteenth Amendment, controlling caselaw can hardly be said to place the question beyond all debate. Because reasonable officers could disagree whether his actions constituted a due process violation, Streicher is entitled to qualified immunity. And absent a viable § 1983 claim against Streicher, the Estate's derivative claim against the County must also fail.

For these reasons, and as is explained in greater detail below, defendants are entitled to summary judgment with respect to the Fourteenth Amendment claim of the Estate pursuant to Rule 56 of the Federal Rules of Civil Procedure. As a result, this Court

2

should dismiss that claim – the only remaining federal cause of action – and relinquish jurisdiction over plaintiffs' remaining claims under Wisconsin law pursuant to 28 U.S.C. § 1367(c).

## **STATEMENT OF FACTS**

Defendants respectfully refer this Court to the Agreed Statement of Facts With Respect to Motions for Summary Judgment ("ASOF") for a statement of the material undisputed facts of record. Defendants refer below to these undisputed facts as they are relevant to their arguments in support of summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where, as here, there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Williams v. Ortiz*, 937 F.3d 936, 941 (7th Cir. 2019). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291-92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, the facts are construed in the light most favorable to the non-moving party. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011). However, "[e]ven on summary judgment, district courts are not required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Id.* at 704 (citing *Omosegbon v. Wells*, 335 F.3d 668, 677 (7th Cir. 2003)). Likewise, the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (internal quotations and

3

citation omitted). Ultimately, to defeat a properly-supported motion for summary judgment, the non-moving party must present "evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (internal quotations and citation omitted).

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE ESTATE'S CLAIM UNDER THE FOURTEENTH AMENDMENT (COUNT I OF THE COMPLAINT).

The Estate's claim under the Fourteenth Amendment must fail both on its merits and under the doctrine of qualified immunity. Not every injury inflicted by a public employee amounts to a Fourteenth Amendment violation; to the contrary, negligence on the part of a public employee, even if it has tragic results, does not violate the Due Process Clause. Given these well-settled principles of due process liability, the Estate cannot demonstrate that Streicher's conduct violated the Fourteenth Amendment. Regardless, the Estate cannot establish that controlling case law would have put *every* reasonable officer in the place of Streicher on notice that his conduct violated the Due Process Clause. As such, Streicher is also entitled to qualified immunity. Because any liability on the part of the County with respect to the Estate's Fourteenth Amendment claim is derivative of that of Streicher, the County is also entitled to summary judgment on the Estate's § 1983 claim.

#### A. The Estate Cannot Demonstrate That Streicher's Conduct Violated the Fourteenth Amendment.

Negligence on the part of a public employee does not amount to a Fourteenth Amendment violation. *Hill*, 93 F.3d at 421 (citing *Daniels v. Williams*, 474 U.S. 327, 333 (1986)). Indeed, "motor vehicle accidents caused by public . . . employees do not rise to

4

the threshold of a constitutional violation actionable under § 1983, absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it." *Id.*, 93 F.3d at 421. The standard articulated in *Hill* requires more than reckless conduct on the part of a public employee; instead, criminal recklessness must be established to sustain a due process claim in this context. *Id.* (equating "criminal recklessness" with "deliberate indifference"); *see also Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021) (same). Stated differently, the fact that a public employee *should have known* that his actions created a danger is insufficient; to establish liability, the public employee must have "had *actual knowledge* of impending harm which he consciously refused to prevent." *Hill*, 93 F.3d at 421 (emphasis added) (noting that test is "subjective, not objective," citing *Farmer v. Brennan*, 511 U.S. 825, 837-40 (1994)); *Flores*, 997 F.3d at 729 (same).

As the Seventh Circuit has further explained:

> In other words, the state actor must have sufficient knowledge of the danger that one can infer he intended to inflict the resultant injury. A lesser degree of knowledge does not violate the due process clause. As a result, it would not be enough even if plaintiffs in the case at bar had proved beyond dispute that [the defendant officer], like any reasonable person, knew that driving at high speed at night without lights could have potentially fatal consequences. Allegations of a public official driving too fast for the road conditions are grounded in negligence, not criminal recklessness, and unintended loss of life resulting from a state employee's lack of due care does not implicate the due process clause.

*Hill*, 93 F.3d at 421 (citations omitted) (further noting that the plaintiff was required to show that the defendant public employee "was willing to let a fatal collision occur").

*Hill*, *Flores*, and the cases relied on by the Seventh Circuit in support of those decisions compel the conclusion that the Estate's Fourteenth Amendment claim cannot survive summary judgment on its merits. In *Hill*, the defendant police officer, while

5

allegedly speeding after midnight without using his headlights, emergency lights, or siren and while not responding to an emergency, ran a red light, crashing into the car driven by the decedent and killing him. 93 F.3d at 420. The Seventh Circuit held that such allegations amounted to no more than negligence and, thus, could not support a due process claim, reasoning that the same would be true even if the plaintiffs could prove that the officer knew that "driving at high speed at night without lights could have potentially fatal consequences." *Id.* at 421.

Twenty-five years later, in *Flores*, the Seventh Circuit addressed a complaint alleging that the defendant police officer, responding to a traffic stop made by other officers for which no backup had been requested, "roared through a residential neighborhood at 78 miles per hour, in disregard of the 30 mile-per-hour speed limit," making infrequent use of his lights and siren, and then accelerated to 98 miles per hour and, "disregarding [a] red light," sped through an intersection of which he knew had an obstructed view, causing a fatal accident. 997 F.3d at 728. According to the Seventh Circuit in *Flores*, the facts alleged went "well beyond those in *Hill*, and the difference matters." *Id.* Indeed, according to the court, the officer's alleged conduct allowed for an inference that he "subjectively knew about the risk he created and consciously disregarded it." *Id.* Specifically, the court observed, the officer had no justification for even responding to the traffic stop, let alone for driving in the manner he chose. Further, the court noted, the officer chose to speed at two-to-three times the speed limit, again without justification. Finally, the court pointed out, the officer knowingly "charged through [the intersection], despite the obstructed view" and while "disregarding the red light." *Id.* at 730, 729.

In *Flores*, the Seventh Circuit cited to two decisions by other circuit courts of appeals, *Sauers v. Borough of Nesquehoning*, 905 F.3d 711 (3d Cir. 2018), and *Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015), as instructive for its analysis. *Id.* at 730. In *Sauers*, the Third Circuit concluded that the complaint contained a plausible claim of deliberate indifference (or criminal recklessness) when the defendant police officer was alleged to have pursued a car that had committed a minor traffic offense at 100 miles per hour, losing control in a curve and crashing into the plaintiff's car. *Id.* (citing *Sauers*, 905 F.3d at 715, 718). In *Browder*, the Tenth Circuit concluded that the complaint stated a due process claim where the defendant officer was alleged, while off duty, to have driven home on city streets at an average speed of 66 miles per hour over a roughly nine-mile stretch and, upon encountering an intersection where the light was red, ignored the light and accelerated into the intersection, causing a collision that killed one and seriously injured another. *Id.* (citing *Browder*, 787 F.3d at 1081).

Here, like the defendant officer in *Hill*, Streicher ran a red light, causing the collision that killed Stinson. Unlike Streicher, the officer in *Hill* was also speeding after midnight while failing to use his headlights, emergency lights, and siren. Certainly, it would have been plausible in *Hill* to infer that the officer was aware that speeding at night without using any of his lights or his siren was likely to cause an accident. Even so, the Seventh Circuit concluded that the officer's conduct in *Hill* could *not* support an inference of criminal recklessness. In contrast, in *Flores, Sauers*, and *Browder*, where an inference of criminal recklessness *was* supported, the defendant officers each consciously chose to assume extreme, known risks – in *Flores*, by consciously choosing, among other things, to "charge" into an intersection against the light and with an obstructed view while travelling at up to 98 miles per hour on a city street; in *Sauers*, by knowingly and

7

unnecessarily pursuing a car for a minor traffic violation at 100 miles per hour; and, in *Browder*, by deliberately choosing to accelerate through a red light while driving off duty on city streets in excess of 65 miles per hour.

Here, no such inference that Streicher consciously ignored a known risk can reasonably be drawn. While the undisputed facts reflect that Streicher entered the intersection of 10th and State Streets against a red light and in a turn only lane, there is no evidence that he did so knowingly or with actual knowledge of an impending harm that he consciously chose to ignore. In contrast to the officers in *Flores* and *Browder*, there is no evidence that Streicher realized the light was red (or that he was in a turn only lane) and nonetheless decided to continue into the intersection without stopping or slowing. And unlike the officer in *Sauers*, there is no evidence that Streicher was speeding, let alone driving at an extreme speed for no reason at all. Instead, at most, the Estate offers evidence that Streicher was inattentive as he drove north on 10th Street approaching the intersection, looking at his squad computer (or his phone) for as long as fifteen seconds (the length of time the light was yellow and then red before the collision). This is categorically different than the conduct of the defendant officers in *Flores*, *Sauers*, and *Browder*, where the officers, among other things, knowingly drove into intersections against the light or were proceeding at an extreme rate of speed for absolutely no reason (or both).

In truth, the undisputed evidence establishes no more than that Streicher was inattentive to his surroundings as he drove north on 10th Street and that his lack of care presented a general threat to others on the road at the same time by creating a risk that an accident would occur, as would be the case with any instance of inattentive or careless driving. But such inattentive driving – even for fifteen seconds – cannot sustain a due

process claim. Indeed, the Seventh Circuit flatly held in *Hill* that proof "that a public official acted in the face of a recognizable risk but generic risk to the public" is insufficient to establish Fourteenth Amendment liability. 93 F.3d at 421-22. "To hold otherwise would dimmish the civil rights statutes to the equivalent of a body of general federal tort law, and open the courts to a flood of litigation which the framers of § 1983 clearly did not intend." *Id.* at 422 (citing *Daniels*, 474 U.S. at 332; *Paul v. Davis*, 424 U.S. 693, 701 (1976)); *see also id.* at 421 (quoting *Parratt v. Taylor*, 451 U.S. 527 (1981), for proposition that such an overly broad reading of § 1983 liability would result in "any party who is involved in nothing more than an automobile accident with a state official" being in a position to "allege a constitutional violation under § 1983").

Allowing the Estate's Fourteenth Amendment claim to proceed to trial would be to incorrectly equate Streicher's negligence with criminal recklessness and would, in the process, open the door to *any* claim of inattentive driving by a public employee that causes an accident to proceed to a jury on a Fourteenth Amendment theory. This would be error under both *Hill* and *Flores*. As a result, Streicher is entitled to summary judgment on the merits of the Estate's due process claim or, as discussed below, under the first prong of the qualified immunity analysis, and the derivative claim against the County must be dismissed on summary judgment for the same reasons.[1]

---

[1] As noted by the Tenth Circuit in *Browder*, an additional concern in a case under the Due Process Clause is whether a plaintiff is required to establish the absence of an adequate remedial course under state law before bringing a federal substantive due process claim. *See* 787 F.3d at 1081 (discussing *Parratt*, *infra*); *see also id.* at 1083-86 (Gorsuch, Circuit Judge, concurring). According to the Seventh Circuit, "a plaintiff cannot invoke the substantive due process clause where state laws provide an adequate post deprivation remedy for the complained-of conduct." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) (citing *McCullah v. Gadert*, 344 F.3d 655, 658-59 (7th Cir. 2003)). Here, on the face of the complaint, plaintiffs assert the existence of state law remedies – tort law claims for wrongful death and for loss of society, companionship, and consortium. As a result, as suggested in *Browder*, and under *Parratt* and *Fox*, the existence of

## B. Regardless, Streicher is Entitled to Qualified Immunity.

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015) (internal quotations and citation omitted). The qualified immunity analysis is two-fold: (1) whether the defendant officer's conduct violated a constitutional right; and (2), if so, whether the right was clearly established at the time. *See, e.g.*, *Lopez v. Sheriff of Cook County*, 993 F.3d 981, 987 (7th Cir. 2021) (citing *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018)).

With respect to the second prong, the plaintiff always bears the burden of establishing the existence of a clearly established constitutional right violated by the public official. *See, e.g.*, *Cibulka v. City of Madison*, 992 F.3d 633, 640 (7th Cir. 2021). "When reasonable minds could differ, in the typical summary judgment decision the balance tips in favor of the nonmovant while in the qualified immunity context the balance favors the movant." *Ellis v. Wynalda*, 999 F.2d 243, 246 n.2 (7th Cir. 1993).

For a right to be clearly established, relevant case law must have previously been developed in such a concrete and factually defined manner so as to make it obvious to all reasonable public officials presented with the same circumstances as the defendant that a particular course of conduct would be unconstitutional. *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 551 (2017) (per curiam). A prior case exactly on point is not necessarily required. However, "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his]

---

adequate state law remedies precludes the Estate's claim for a deprivation of substantive due process, and the claim must be dismissed for this reason as well.

shoes would have understood that he was violating it,' meaning that 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Sheehan*, 575 U.S. at 611 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see also Lopez*, 993 F.3d at 988 ("Determining whether an officer violates clearly established law requires a look at past cases with specificity. The Supreme Court has time and again instructed lower courts not to define clearly established law at a high level of generality.") (internal quotations and citations omitted).

Even if the contours of the right in question are found to have been clearly delineated at the relevant time, a public official may still enjoy qualified immunity if it was objectively reasonable for him to believe that his actions did not violate the federal right. In fact, public officials are shielded from suit where officials "of reasonable competence could disagree" that such acts were objectively reasonable. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (reasoning that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *Lopez*, 993 F.3d at 988 ("That sounds like a high bar because it is.") (citing *Malley*).

Here, as discussed above, the Estate cannot establish that Streicher's conduct violated the Due Process Clause. Regardless, even if the Estate could do so, it cannot be said that the right in question was so clearly established in January 2020 that *every* reasonable officer in Streicher's place would have known he was violating the Fourteenth Amendment. There is no Supreme Court precedent directly on point. Even looking to *Hill* and *Flores*, however, it can hardly be said that it is beyond all debate that Streicher's conduct was unconstitutional. The conduct of the defendant officer in *Hill* – speeding at night for no reason and without employing the squad's lights or siren – was arguably more reckless than Streicher's, yet it was insufficient to state a claim for a due process violation.

11

And while the defendant officer's conduct in *Flores* – speeding through a residential neighborhood at almost 80 miles per hour for no reason and then speeding up to almost 100 miles per hour and consciously entering an intersection with an obstructed view and against a red light – was enough to sustain a due process claim, the conduct unquestionably involved extreme, known risks not implicated by Streicher's conduct. Simply put, there is neither controlling authority nor a robust consensus of cases of persuasive authority that put the question of whether Streicher's conduct was criminally reckless beyond all debate.

Given the available case law on this issue, officers of reasonable competence could well disagree whether Streicher's actions violated the Fourteenth Amendment. *See, e.g.*, *Malley*, 475 U.S. at 341 . The Estate cannot sustain its burden of demonstrating otherwise, so, on summary judgment, the balance tips in favor of Streicher, and the Due Process claim must be dismissed for this reason as well. *See, e.g.*, *Cibulka*, 992 F.3d at 640; *Ellis*, 999 F.2d at 246 n.2.

## II. THIS COURT SHOULD RELINQUISH JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS PURSUANT TO 28 U.S.C. § 1367(c).

The Estate's Fourteenth Amendment claim should be dismissed on summary judgment for the reasons set forth above. When federal claims drop out of a case, leaving only state-law claims, the district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law claims, and a "general presumption in favor of relinquishment applies." 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (holding that that district court acted within its discretion in relinquishing supplemental jurisdiction). There are only a few circumstances that may displace that presumption, namely:

> (1) [when] the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) [when] substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480 (internal quotations and citation omitted). None of those circumstances apply here to plaintiffs' state law negligence claims (Counts III, IV, and V of the Complaint).[2]

First, Wisconsin has a tolling statute that would allow plaintiffs thirty days after a dismissal from this Court to re-file suit in state court, even if the applicable statute of limitations expired while this suit was pending. Wis. Stat. § 893.13. Second, any resources or efforts expended by the Court and the parties to date will not need to be duplicated, as any discovery with respect to the state law claims can be utilized in any state court proceeding, and this Court will not have addressed the negligence claims on the merits. Finally, while the issue of Streicher's negligence may not be in dispute, the resolution of plaintiff's negligence claims, including issue of damages, is not "absolutely clear."

## CONCLUSION

For the reasons stated herein, defendants submit that this Court should enter an order granting them summary judgment with respect to the Estate's claim under the Fourteenth Amendment, dismissing the claim against them in its entirety, relinquishing jurisdiction over plaintiffs' only remaining claims under state law pursuant to 28 U.S.C. § 1367(c), and awarding them their costs in defending this action, together with such other and further relief as this Court deems just and appropriate.

---

[2] Plaintiffs' only other claim, Count VI of the Complaint, seeks punitive damages for the conduct allegedly underlying plaintiffs' five substantive claims. (*See* Complaint, ¶¶ 70-74.) As such, its resolution for the purposes of this motion should track the resolution of plaintiffs' five other claims.

13

Dated at Milwaukee, Wisconsin this 1st day of July, 2022.

**HANSEN REYNOLDS LLC**

/s/ Andrew A. Jones
Andrew A. Jones
301 North Broadway, Suite 400
Milwaukee, Wisconsin 53202
(414) 326-4952 (phone)
(414) 273-8476 (fax)
ajones@hansenreynolds.com

*Attorneys for Defendants Milwaukee County and Wisconsin County Mutual Insurance Corporation*

**GRADY, HAYES & NEARY LLC**

/s/ Thomas J. Donnelly
Thomas J. Donnelly
N14 W23777 Stone Ridge Drive
Waukesha, Wisconsin 53188
(262) 347-2001 (phone)
(262) 347-2205 (fax)
tjd@ghnlawyers.com

*Attorneys for Defendant Joel Streicher*