# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ESTATE OF CEASAR STINSON and
CHIPO K. SAMVURA,

               Plaintiffs,

v.

MILWAUKEE COUNTY, JOEL R.
STREICHER, and WISCONSIN
COUNTY MUTUAL INSURANCE
CORPORATION,

               Defendants.

Case No. 21-CV-1046-JPS

**ORDER**

## 1.    BACKGROUND

On the morning of January 25, 2020, Joel Streicher ("Streicher"), then an officer with the Milwaukee County Sheriff's Department, was operating his department SUV when he collided with a vehicle operated by Ceasar Stinson ("Stinson"). Stinson died at the scene as a result of the crash. Stinson's estate and his wife Chipo Samvura ("Samvura") (collectively, "Plaintiffs") subsequently brought suit in state court. Defendants Milwaukee County and Wisconsin County Mutual Insurance Corporation ("WCMIC"), with Streicher's consent, removed the action to the Eastern District of Wisconsin, and it was assigned to this Court. ECF Nos. 1 and 5. Plaintiffs made a substantive due process claim arising from Stinson's death and a substantive due process claim arising from Samvura's loss of consortium with Stinson, as well as common-law negligence claims for wrongful death and loss of consortium, a vicarious liability claim against

Milwaukee County, and a claim for punitive damages. ECF No. 1-1 at 16–20.

Milwaukee County, WCMIC, and Streicher (collectively, "Defendants") subsequently filed motions for partial judgment on the pleadings. ECF Nos. 8 and 11. As is pertinent here, Defendants moved on the basis that Stinson had not sufficiently alleged a substantive due process violation because Streicher's conduct did not meet the applicable deliberate indifference standard. *See id.* The Court denied Defendants' motion in this regard, finding that, on a Rule 12(c) posture, "[t]he allegations in the complaint are sufficient to permit an inference that Streicher acted with intent to cause harm" as the deliberate indifference standard requires. ECF No. 26 at 3–5. The Court further stated that "[t]he question of whether, in fact, he did is best left for the fact-finding portion of the case." *Id.* On July 1, 2022, Defendants filed a motion for partial summary judgment on Stinson's substantive due process claim. ECF No. 29. The motion is now fully briefed, ECF Nos. 30, 34, and 37, and will be denied.

## 2.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*,

815 F.3d 356, 360 (7th Cir. 2016). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005). Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

3. **RELEVANT FACTS**

The parties have submitted a joint statement of material facts, and statements of their disputes thereto, as required by the Court's trial scheduling order. ECF Nos. 33, 35, 39. The Court adopts the relevant and undisputed facts as set forth in the parties' joint statement of facts, with minor, non-substantive edits, and notes factual disputes where appropriate.

Defendant Joel Streicher was on January 25, 2020 an employee of the Milwaukee County Sheriff's Office ("MCSO"). ECF No. 33 at 2. Defendants stipulate that Streicher was acting under color of law and within the scope of his employment during the events at issue on that date. *Id.*

At 11:11:02 a.m. on January 25, 2020, Streicher and Stinson were involved in an automobile collision that killed Stinson (the "collision"). *Id.*

Prior to the collision, Streicher had between 23 and 24 years of service in law enforcement, had been trained on the traffic laws, had probably investigated over one hundred crashes, knew more about the law

than the average person, and knew that the law has variations of intent. *Id.* at 3. Streicher was aware that a person can engage in unlawful conduct by driving recklessly and endangering a life without intending to kill someone because the person driving knew or should have known that their conduct could lead to injury. *Id.* Streicher knew that driving while distracted could lead to accidents and accidents could lead to death. *Id.* Streicher was trained that he was not allowed to let his computer distract from his driving and that driving distracted by his computer could lead to "bad things." *Id.* (quoting ECF No. 32-1 (Streicher deposition transcript) at 13–14).

Prior to the collision, Streicher knew that violating the rules of the road could lead to collisions. *Id.* On July 25, 2018, Streicher violated the rules of the road by proceeding straight through an intersection from a left turn only lane, causing an accident. *Id.* Specifically, after stopping at a red light at the intersection, Streicher drove straight into the intersection while in a left turn only lane, causing a collision with the car in the lane to his right, which had the right of way to proceed into that lane. *Id.* at 4.[1]

At the time of the collision on January 25, 2020, Streicher was on duty with the MCSO and was driving an unmarked MCSO Chevy Tahoe squad SUV (the "Tahoe"). *Id.* Streicher's duty assignment that day was to patrol a portion of the interstate freeway system in Milwaukee County. *Id.* At the

---

[1]The parties have agreed on two other instances of conduct preceding the collision, namely that Streicher (1) was previously subject to departmental reprimand for conduct related to the search of a residence, and (2) previously pled guilty to a misdemeanor charge of disorderly conduct related to solicitation for sex, an offense for which he also received departmental discipline. ECF No. 33 at 3–4; *see also* ECF No. 35 (Plaintiffs' statement of disputed facts) at 1. Defendants agree these previous acts occurred but object that these acts are immaterial to the claims at issue and inadmissible. ECF No. 33 at 3–4, nn.2 and 3.

time of the collision, Streicher was driving from the Milwaukee County Safety Building to the entrance ramp onto northbound I-43 at West Highland Avenue for the purpose of continuing his patrol duties. *Id.*

Streicher began work that day at about 10:00 a.m., went to a Jimmy John's at approximately 10:45 a.m., then went to the Milwaukee County Safety Building to use the bathroom. *Id.* While at the Safety Building, Streicher tried to get on the internet using various apps on his phone, including Zoosk, a dating app. *Id.* Streicher then returned to his Tahoe shortly after 11:00 a.m. *Id.*

He opened Zoosk on his phone sometime either just before entering the Safety Building or after leaving the Safety Building as he approached or reached his Tahoe. *Id.* at 4–5. That morning, before he went on duty, Streicher had been involved in an explicit conversation with a female acquaintance via the Zoosk app. *Id.* at 5. At 10:45 a.m., the woman messaged Streicher as part of the explicit conversation, and he replied at 10:52 a.m. *Id.*[2]

---

[2] Plaintiffs' statement of disputed facts appears to dispute the exact timeline on which the Zoosk conversation occurred, seemingly in an attempt to suggest Streicher was distracted by this conversation at the time of the collision. *See* ECF No. 35 at 1–2; *see also* ECF No. 34 at 6–7. Plaintiffs' "dispute" consists of laying out the exchange of messages via Zoosk without specifying the exact time at which each message was sent. ECF No. 35 at 1–2. They follow the message timeline with a statement that "[a]t 11:10:40[,] Streicher likely looked at the phone unlocking it 22 seconds before impact." *Id.* at 2. Defendants dispute Plaintiffs' characterization of the timeline. ECF No. 37 at 3.

The record confirms that:
- The woman first messaged Streicher via Zoosk on January 25, 2020 at 2:25 a.m. Pacific Daylight Time, which was 3:25 a.m. Central Standard Time (CST) on that date;
- Streicher messaged the woman at 7:39 a.m. CST;
- The woman messaged Streicher at 10:45 a.m. CST;
- Streicher messaged the woman at 10:52 a.m. CST; and

The collision occurred at the intersection of N. 10th Street and W. State Street. *Id.* At the time of the collision, Streicher was driving northbound on North 10th Street, and Stinson was driving westbound on West State Street. *Id.* Streicher was in the right-hand lane on North 10th Street, a right turn only lane, when he entered the intersection. *Id.* at 6.

Milwaukee Police Officer William Hanney, assigned to the Specialized Patrol Division of the Milwaukee Police Department as a member of the Crash Reconstruction Unit, prepared a Collision Analysis Report. *Id.* at 5. Officer Hanney concluded that Streicher had 14.5 to 15 seconds of either a yellow light or a red light—4 seconds of yellow and 11 to 11.5 seconds of red—to slow and stop his Tahoe to avoid the collision. *Id.*[3] According to Officer Hanney's report, Streicher proceeded northbound on North 10th Street towards a red light for roughly 489 to 511 feet, traveling at 29 to 30 miles per hour. *Id.* Streicher did not brake or take any other action to slow his Tahoe or avoid the collision, and he entered the intersection in a right turn only lane and against a red light. *Id.*

---

- The woman messaged Streicher at 11:33 a.m. CST, and numerous times thereafter on the same day.

ECF No. 36-4 (exhibit to Streicher deposition) at 2.

As stated later in the joint statement of facts, Streicher's phone display turned on 26 seconds prior to the collision, and his phone unlocked 22 seconds prior to the collision. The record confirms that although the woman did indeed message Streicher back after his 10:52 a.m. message, her message did not arrive until *after* the collision. The record further confirms that Streicher received no other messages on the Zoosk app in the moments before the collision. *See id.*

[3]The parties agree that, as part of the investigation of the collision, Officer Hanney shut down North 10th Street and drove it at the speed at which Streicher was going "to see how long that 11 seconds is." ECF Nos. 35 at 2 and 39 at 5–6. Hanney testified that "it's a long time." *Id.* However, the Court finds Officer Hanney's comments in this regard to be irrelevant at summary judgment; whether to credit his assessment about this duration of time is a jury question.

The speed limit on North 10th Street between Wells Street and Highland Avenue is thirty miles per hour. *Id*. As Streicher drove northbound on North 10th Street immediately prior to the collision, he was driving 29 to 30 miles per hour. *Id*. Stinson was travelling approximately 24 to 27 miles per hour prior to the collision. *Id*. at 5–6. Streicher did not have his emergency lights or siren on, as he was not responding to an emergency call. *Id*. at 6.

At the time of the collision, Streicher was not under the influence of alcohol, drugs, or any other intoxicating substance. *Id*. Streicher testified he is not aware of anything that obstructed his view of the intersection of North 10th Street and State Street as he traveled northbound on North 10th Street or as he entered the intersection immediately prior to the collision. *Id*.

Streicher testified that, as he drove northbound on North 10th Street, he looked at the screen of the computer in his Tahoe to check for new assignments or activity. *Id*. Streicher testified he does not recall exactly how long or how many times he looked at the computer in his Tahoe as he drove northbound on North 10th Street, but, according to Streicher, he was not using the computer immediately prior to or at the time of the collision. *Id*. Streicher recalled looking at his computer, describing it "as a look, a glance: more than a glance but not a long extended . . . look at the computer." *Id*. (quoting ECF No. 32-1 (Streicher deposition transcript) at 16, 18). Streicher's personal cellular phone was unlocked, but, according to Streicher, he was not using the phone immediately prior to or at the time of the collision. *Id*.

At his deposition, Streicher testified he did not recall telling investigating officers that "he was looking away from the road prior to the crash." *Id.*[4]

The display on Streicher's phone turned on at 11:10:36 a.m., 26 seconds before the collision. *Id.* at 7. The phone unlocked 22 seconds before the collision. ECF Nos. 39 at 4 and 35 at 2. Streicher could unlock his phone either by entering a code or by facial recognition. ECF No. 33 at 7. Streicher testified it was more likely that he looked at the phone to unlock it than he entered the code to do so. *Id.* At 11:11:06 a.m., four seconds after the collision, an application launched on the phone. *Id.* According to the official investigation into the collision, the phone showed no evidence of user interaction between when it was unlocked and when the app launched following the collision. *Id.*[5]

---

[4]Plaintiffs state that "[t]o date, Streicher, who was not physically impaired or on drugs or drunk, cannot or will not account for these 15 to 15.5 seconds" [when the light in the intersection was either yellow or red] and that he "has not explained where he was looking in the seconds before the crash." ECF No. 35 at 2. Defendants dispute this characterization by pointing to Streicher's testimony that (1) he does not remember exactly how long or how many times he looked at the computer in his Tahoe as he traveled northbound on North 10th Street, (2) he was not using the computer "immediately prior to or at the time of the collision" and (3) he does not recall what he was looking at, "other than to glance at his squad car computer," as he traveled. ECF No. 39 at 4–5.

[5]Plaintiffs state that "Streicher likely looked at the phone unlocking it 22 seconds before impact." ECF No. 35 at 2. Defendants agree that the phone unlocked 22 seconds before impact but respond to Plaintiffs' dispute of fact by stating that "Streicher has no memory of unlocking the phone himself, and it is possible that the phone unlocked on its own." ECF No. 39 at 3–4. Defendants further highlight that Streicher's phone

> showed no evidence of user interaction . . . between when it was unlocked 22 seconds before the collision and 4 seconds following the collision. . . . This means that no apps were opened or in use (including the Zoosk app), the screen was not touched, no calls were made or received, no texts were sent or received, and the phone was not used or manipulated in any way in that time period.

Following the collision, Streicher got out of his Tahoe and walked over to look at the crash and knew it was a bad crash. *Id.* Streicher told the first officer he talked to at the scene that he was not sure but that he thought he (Streicher) may have run the red light. *Id.* MCSO Sergeant Michael Krznarich and Deputy Joann Sowin both stated to investigators that while at the scene of the collision, Streicher told them he was not sure but that he thought he ran a red light. *Id.* at 7.

Streicher does not recall seeing that the light for North 10th Street at the intersection of North 10th Street and West State Street was red when he entered the intersection. *Id.* Streicher did not see Stinson or the car Stinson was driving prior to collision. *Id.* Streicher also did not see a car traveling eastbound on West State Street that drove through the intersection roughly five seconds before he entered the intersection. *Id.* at 7–8.

Streicher testified that as he approached the intersection, he should have been aware that he had a red light and that he should have stopped for the light. *Id.* at 8. Streicher testified he violated two rules of the road in connection with the collision: he ran a red light and continued straight through the intersection even though he was in a right turn only lane. *Id.* at 7.

Stinson died at the scene as a result of the collision. *Id.* at 8. As a result of the collision, the Milwaukee County Sheriff recommended that Streicher be terminated from employment with the MSCO; thereafter, Streicher

---

*Id.* at 4. (citing ECF No. 38-1, deposition transcript of Eric Draeger, a detective in the Milwaukee Police Department Digital Forensics High Technology Unit).

resigned his employment in lieu of termination. *Id.*[6] Also as a result of the collision, Streicher was charged with and pleaded guilty to one count of homicide by negligent operation of a vehicle in violation of Wis. Stat. § 940.10(1). *Id.* In pleading guilty, Streicher knowingly and voluntarily admitted to the facts as alleged in the criminal complaint. *Id.* An element of the crime to which Streicher pleaded guilty was that his operation of a motor vehicle created a substantial and unreasonable risk of death or great bodily harm to another. *Id.* (citing Wis. Stat. § 939.25(1)).

### 4. ANALYSIS

Defendants[7] move for summary judgment on that basis that the undisputed facts demonstrate Streicher's conduct does not evince the mental state—deliberate indifference or criminal recklessness—required to make a Fourteenth Amendment substantive due process claim. ECF No. 30 at 4. Alternatively, they argue in a footnote, the Court should grant summary judgment on this claim because Plaintiffs have not established that state law remedies are inadequate to address their injury. *Id.* at 9–10, n.2. They additionally ask the Court to recognize that Streicher is entitled to qualified immunity because reasonable officers could disagree as to whether his conduct violated Stinson's constitutional rights. *Id.* at 10. Finally, Defendants move for this Court to relinquish jurisdiction over

---

[6]The parties agree that this fact is accurate but Defendants object that it is immaterial and inadmissible. ECF No. 33 at 8, n.4.

[7]All three Defendants move collectively for summary judgment. However, the Court's order on the motions for partial judgment on the pleadings dismissed with prejudice the constitutional claims against WCMIC. ECF No. 26 at 9. As Defendants note, any constitutional claim that proceeds after summary judgment proceeds only against Streicher and, derivatively, against Milwaukee County. ECF No. 30 at 2, 9.

Plaintiffs' three remaining state law claims and their punitive damages claim if their motion for summary judgment is granted as to the constitutional claim. *Id.* at 12–13. Plaintiffs, in response, argue that the undisputed facts could support a finding of criminal recklessness, and that Streicher is not entitled to qualified immunity. ECF No. 34 at 1–2.

The Court will deny Defendants' motion. The undisputed facts in this case—after development through discovery—still could support competing inferences as to whether Streicher's conduct was criminally reckless; resolution of the question of intent also requires assessment of Streicher's credibility. Consistent with the Court's prior order, the question of whether, in fact, Streicher acted with intent to cause harm is a question best resolved by a jury. *See* ECF No. 26 at 5. Because factual disputes and credibility determinations preclude summary judgment at this time, the Court will defer on the question of qualified immunity. Pursuant to the parties' notice of settlement of Plaintiffs' claims under state law, ECF No. 40, the Court denies as moot summary judgment as to the issue of relinquishing jurisdiction over those claims.

### 4.1    Substantive Due Process Claim

To prevail on a substantive due process claim arising out of injuries caused by a public official's use of an official vehicle, Plaintiffs must show that Streicher acted "with criminal recklessness—which is the same as deliberate indifference." *Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021) (citations and quotations omitted). Deliberate indifference requires the offending officer to have "actual knowledge of impending harm which he consciously refused to prevent" or have "subjectively kn[own] about the risk he created and consciously disregarded it," evincing a "willing[ness] to let a fatal collision occur." *Id.* at 729–30 (citing *Hill v.*

*Shobe*, 93 F.3d 418, 421 (7th Cir. 1996)). "Identical behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions." *Id.* "The key question is whether the officer had sufficient knowledge of the danger such that one can infer he intended to inflict the resultant injury." *Id.* (citations and quotations omitted).

Summary judgment is inappropriate as to this claim because resolving whether Streicher acted with the requisite intent not only requires considering the undisputed facts of the case but also requires weighing competing inferences from those facts and assessing Streicher's credibility, which are functions best left to a jury. *See Abdullahi*, 423 F.3d at 769; *see also Bowyer v. U.S. Dept. of Air Force*, 804 F.2d 428, 430 (7th Cir. 1986) ("Even though there may be no dispute over the basic facts, summary judgment is inappropriate if the parties disagree about the inferences to be drawn from those undisputed facts."). The Court previously found that, in a posture challenging the sufficiency of the complaint, Plaintiffs had adequately pled a substantive due process claim. ECF No. 26 at 5. The Court previously found that dismissal was inappropriate because "one does not need to know, for a fact, that a light is red to know, for a fact, that driving without looking will cause an accident. . . . The question is whether Streicher looked down . . . for such a long period of time *knowing* that it would result in harm to others." *Id.* This conclusion still holds on summary judgment.

After examining the facts and drawing reasonable inferences from them, a jury could conclude that Streicher looked away from the road for such a significant period while the traffic light was yellow or red that he would have known his conduct was likely to result in harm, and yet consciously decided not to abate his risky behavior. Streicher has

acknowledged he looked away from the road, and/or at his Tahoe's computer screen, for some time before the collision, though he has testified he does not recall for exactly how long. It is also undisputed that Streicher's phone display activated, and his phone was unlocked at the time of the collision. Even though it is undisputed that Streicher's phone showed no signs of active user interaction during this time, *see supra* note 5, the lack of user interaction does not necessarily establish that he was completely ignoring his phone. The fact that his phone unlocked, likely through facial recognition, shortly before the crash is consistent with a finding that he was looking at it intentionally, at least long enough to unlock it—and, in the process, intentionally ignoring the road ahead in the process. *See Omnicare, Inc. v. UnitedHealth Grp.*, 629 F.3d 697, 704 (7th Cir. 2011) (noting that, at summary judgment, district courts "are not required to draw every requested inference . . . [and] must only draw reasonable ones that are supported by the record").

Whether Streicher was looking at his computer for a work-related purpose or at his phone in order to engage in a lewd conversation (and the exact content and timeline of that conversation) is immaterial. *See supra* note 2.[8] What matters is that he was looking away from the road. The facts that his phone was unlocked and potentially had his attention, and that he has admitted to not looking at the road for the at least part of the time in which he approached the intersection, are enough to support a finding that he looked away from intersection he was approaching long enough—up to 15

_____

[8]Likewise, Plaintiffs' argument that Streicher was somehow not acting in service of a law enforcement objective by allegedly sending lewd messages while on the clock is irrelevant in light of the parties' stipulation that Streicher was acting within the scope of his employment. *See* ECF Nos. 33 at 2, 34 at 3–4, and 37 at 8.

to 15.5 seconds—to appreciate that his doing so was likely to result in harm to others. *See Flores*, 997 F.3d at 729 ("Identical behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions."); *Est. of Jones v. City of Chi.*, No. 04 C 3742, 2008 WL 4153679, at *4–5 (N.D. Ill. Sept. 2, 2008) (granting summary judgment to officers who had, at most, approximately five seconds from the time they saw victims until impact). Whether Streicher's law enforcement experience, general awareness of the risks of using his computer or electronic devices while driving his Tahoe, and 2018 on-duty collision enhance the likelihood that he knew, on the day of the subject incident, that his conduct posted extreme risk, is similarly for the jury to decide.[9]

Equally important, a jury should hear Streicher's testimony and decide whether his account of the 15 to 15.5 seconds before the collision is credible. A jury, also considering the above-referenced evidence with respect to phone and computer use, could choose to credit Streicher's testimony as to what he remembers, *see supra* note 4 and accompanying text, and conclude that, although he does not remember what he was doing

---

[9]Plaintiffs argue briefly that Streicher's guilty plea to one count of homicide by negligent operation of a vehicle, in violation of Wis. Stat. § 940.10(1), also proves his knowledge on the day of the incident. The mental element for this statute is "criminal negligence as defined in s. 939.25." Wis. Stat. § 940.10(1), Judicial Council Note, 1988. The referenced section in turn defines criminal negligence as "ordinary negligence to a high degree, consisting of conduct that the actor *should* realize creates a substantial and unreasonable risk of death or great bodily harm to another[.]" Wis. Stat. § 939.25 (emphasis added). By their terms, the Wisconsin statutes defining the offense to which Streicher pled guilty do not prove his subjective intent as required for a substantive due process claim, because the offense requires only objective knowledge. The subsequent guilty plea is therefore immaterial on summary judgment.

during every second of that period, he was not actively distracted and ignoring risks ahead of him during that time. Conversely, a jury considering this evidence could determine that Streicher's testimony in this regard is ultimately self-serving and that the facts otherwise point to his lack of attention to the road for such a long period that he must have known about the extreme risks his inattention posed.[10]

Defendants argue that the facts "allow for no more than the inference that [Streicher] was inattentive." ECF No. 30 at 1. In support of this point, they contend that the facts of this case are more analogous to *Hill*, 93 F.3d 418—where the Seventh Circuit found deliberate indifference was not sufficiently alleged—and distinguishable from *Flores*, 997 F.3d 725—where deliberate indifference was sufficiently alleged. *Id.* at 4–8. Their distinctions are not persuasive, however.

In *Hill*, the Seventh Circuit reversed the district court's denial of a motion to dismiss a substantive due process claim where a defendant officer "was driving well over the speed limit, even though he was not responding to an emergency" and "failed to have his cruiser's headlights, emergency lights, or siren operating," *Hill*, 93 F.3d at 420. He ran a red light and crashed into plaintiff's car, resulting in severe injuries to and eventually the death of the plaintiff. *Id.* The Seventh Circuit found that the defendant officer's actions did not support an inference of intent to inflict the resulting

---

[10]Defendants argue, and the Court agrees, that Streicher's prior misdemeanor conviction, prior job discipline, and loss of employment as a result of the collision are immaterial. *See supra* notes 1 and 6. These instances are not admissible to show Streicher's character or propensity to commit the alleged injury. *See* Fed. R. Evid. 404. They do not appear at face value to be admissible under any of Fed. R. Evid. 404(b)(2)'s exceptions and have no probative value to prove Streicher was aware of the risks of his conduct that day.

harm, and that he had merely "acted in the fact of a recognizable but generic risk to the public at large." *Id.* at 421–22.

In contrast, the defendant officer in *Flores*, also not responding to an emergency, drove at speeds between 78 and 98 miles per hour, with his emergency lights and siren operating intermittently. *Flores*, 997 F.3d at 728. The officer drove through a red light at an intersection with an obstructed view of cross traffic, which resulted in the death of the plaintiff. *Id.* The Seventh Circuit, drawing on *Sauers v. Borough of Nesquehoning*, 905 F.3d 711 (3d Cir. 2018) and *Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015), found that a jury could find that the defendant officer's actions demonstrated the requisite level of intent for a substantive due process claim, and reversed the district court's dismissal of that claim. *Id.* at 729–30.

Defendants do not convincingly argue that Streicher's conduct somehow imposes a lesser degree of risk than that posed by the officers' conduct in *Flores*, *Sauers*, and *Browder*, which was so extreme as to support an inference of intent to harm. But driving towards an intersection without looking at the road for up to 15.5 seconds—even at or around the posted speed limit of thirty miles per hour—poses a similar risk of causing a collision and grave injuries as speeding through an intersection against a red light while looking at the road ahead. *See also* ECF No. 26 at 5.

Defendants point to the fact that the defendant officers in *Flores*, *Sauers*, and *Browder* were all traveling well over the speed limit in response to non-emergency situations. This common choice to "assume extreme, known risks" by driving above the speed limit, Defendants argue, weighs heavily in the analysis of whether an officer's behavior evinces subjective awareness of risk and therefore deliberate indifference. *See* ECF No. 30 at 7–8. But Defendants do not satisfactorily explain how *Hill*—where the

defendant officer was also speeding but no deliberate indifference was found—is more analogous to the facts here than *Flores* and therefore controlling.

The undisputed fact that Streicher drove at or below the speed limit is, on its own, not enough to defeat an inference that he still appreciated the risk of driving into an intersection in the right turn only lane against a red light—the Seventh Circuit's divergent conclusions in *Hill* and *Flores* demonstrate that speed is not the sole factor in analyzing whether an officer's behavior supports an inference that he was subjectively aware of, and consciously disregarded, a risk of harm. *See also Posey v. Miro*, No. 11 CV 5660, 2014 WL 3843940, at *4 (N.D. Ill. Aug. 5, 2014) (finding a jury could conclude the defendant officer, who traveled the wrong way down a one-way street, saw the victim before impact and had time to stop to avoid impact).

Defendants also attempt to distinguish the case at bar from *Flores*, *Sauers*, and *Browder* by characterizing the case law as definitively ascribing intent to defendant officers even though the courts in those cases decided only that the question of intent should proceed beyond a motion to dismiss. For example, Defendants highlight that the defendant officers in *Flores* and *Browder* ran red lights and argue that, unlike Streicher, both "realized the light was red," demonstrating that they knew their actions created an imminent risk of injury. ECF No. 30 at 8. The *Flores* court made no such finding; rather, the question of whether the defendant officer there knew of the risk he posed by driving into an intersection against a red light at a high speed (i.e., whether, despite his obstructed view of the intersection, he at all appreciated the fact that the light was red and that driving into the intersection against the signal posed a risk of harm) was deemed

sufficiently contestable to survive a motion to dismiss and be submitted to further factfinding. *See Flores*, 997 F.3d at 729–30. The *Browder* court similarly found that "taking the facts alleged as true, [the defendant officer] violated the constitutional rights" of the plaintiffs, affirmed the district court's denial of the defendant officer's motion to dismiss, and remanded the case. *Browder*, 787 F.3d at 1082–83.

Without deciding whether the officers in fact knew that they were proceeding against a red light into an intersection, the *Flores* and *Browder* courts found that the officers' actions could permit a jury to find the officers intended to cause harm. This case presents a similar question—whether Streicher's conduct supports an inference that he acted with actual knowledge of an impending harm that he consciously chose to ignore—that is not capable of definitive resolution on summary judgment.

In effect, Defendants appear to argue that, in order to sustain a substantive due process claim in this context, Plaintiffs must establish that Streicher had complete subjective knowledge of the specific impending harm, that is, that he was about to drive into the intersection in a right turn only lane against the red light and into Stinson's car. *See* ECF No. 30 at 8. But the case law does not quite require this: even where an officer has an obstructed view of oncoming traffic, "the law does not require perfect knowledge on [the officer's] part"—an officer who cannot completely see where his car is headed can still be found to have knowledge that his conduct "created an imminent risk of fatal injury." *Flores*, 997 F.3d at 730. This logic applies where the officer's obstructed or incomplete view of the road ahead is the result of his own choices to look at his computer or phone and away from the road. It is, again, for the jury to decide whether Streicher

in fact looked away from the road long enough that he must have subjectively known of the risks his conduct imposed.

Ultimately, "[a]n officer . . . can act so recklessly that a trier of fact would be entitled to find subjective knowledge of an unjustifiable risk to human life and conscious disregard of that risk." *Id.* at 729–30. This may or may not be such a case where subjective knowledge can be found based on the level of care or recklessness evinced by Streicher's conduct. But it is the jury, and not the Court on summary judgment, that must weigh the evidence, draw reasonable inferences, and assess witness credibility to answer that question. The Court therefore denies Defendants' motion on this basis.

### 4.2    Adequacy of State Law Remedies

Defendants argue, in a footnote, that "on the face of the complaint, plaintiffs assert the existence of state law remedies," which "precludes the Estate's claim for a deprivation of substantive due process[.]" ECF No. 30 at 9–10, n.1 (citing *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010)). Plaintiffs do not respond at all to this argument. Defendants have spent precious little time exploring the case law, developing this legal argument, and explaining how it applies to the facts of this case (despite having room to do so, as their brief clocks in well under the applicable page limit). As a result, the Court declines to consider the argument and will not grant summary judgment on this basis. *See U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"); *Est. of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

### 4.3    Qualified Immunity

"Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Abbott*, 705 F.3d at 713 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome a defendant's claim of qualified immunity, "the plaintiff[] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Id.* (citations omitted). "Law enforcement officers, the [Supreme] Court has stressed, 'can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Strand v. Minchuk*, 910 F.3d 909, 915 (7th Cir. 2018) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Considering the competing inferences and credibility determinations outlined above, a jury could conclude that Streicher's conduct evinced the requisite level of intent for a substantive due process claim. Summary judgment on the question of qualified immunity is generally inappropriate where "determining whether [defendant's] violation of [plaintiff's] rights was clearly established [as unlawful] . . . requires findings of fact." *Taylor v. City of Milford*, 10 F.4th 800, 808 (7th Cir. 2021). Whether the law clearly established that Streicher's acts were violations of Stinson's constitutional rights—that is, how reasonable officers would, after twenty years' time, understand the 1996 precedent of *Hill v. Shobe* as applied to the facts of this case—is to be determined after the facts are clarified. If a jury draws inferences in Stinson's favor and finds that he has established a constitutional violation, Streicher may yet argue that the case law in this circuit did not clearly establish on January 25, 2020, that

it was a violation of Stinson's constitutional rights for Streicher to operate his Tahoe while not paying attention to the road and proceeding against a red light into an intersection without the right of way. *See Taylor*, 10 F.4th at 812 (citing *Estate of Escobedo v. Martin*, 702 F.3d 388, 398 n.4 (7th Cir. 2012) ("Though rare, trial courts may consider qualified immunity after trial.").

### 4.4 State Law Claims

The parties informed the Court on October 11, 2022 that they had settled all of Plaintiffs' claims under Wisconsin law and would file a stipulation seeking dismissal of those claims. ECF No. 40. In light of both the parties' settlement and the denial of summary judgment, the issue of relinquishing jurisdiction over Plaintiffs' state law claims is moot.

### 4.5 Punitive Damages

Defendants again in a footnote request summary judgment in their favor on Plaintiffs' claim for punitive damages. ECF No. 30 at 13, n.2. Because the question of punitive damages is bound up in a determination of Streicher's mental state, *see Smith v. Wade*, 461 U.S. 30, 39–51 (1983), the Court leaves resolution of this issue for another day.

### 5. CONCLUSION

Because the facts of this case present competing inferences and significant issues of credibility only capable of resolution by a jury, the Court denies Defendants' motion for partial summary judgment. The Court defers on the corollary legal question of qualified immunity until the underlying factual issues are decided.

Accordingly,

**IT IS ORDERED** that Defendants' motion for partial summary judgment, ECF No. 29, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2022.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge